UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK McCOY, | ) |
|                       Plaintiff, | ) No. 22 CV 2690 |
| v. | ) Magistrate Judge Young B. Kim |
| ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security. | ) |
|                       Defendant. | ) November 22, 2023 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Derrick McCoy brings this lawsuit against Defendant Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security ("DHS"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ("ADEA"). (R. 1, Compl.) Before the court is DHS's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that McCoy fails to state a claim for discrimination because DHS was not his employer. The motion is denied for the following reasons:

**Background**

For purposes of ruling on the motion to dismiss, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in McCoy's favor. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016). However, the court does not accept legal conclusions or conclusory

allegations. *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted).

McCoy is African American and was over the age of 40 during the relevant period. (R. 1, Compl. ¶ 4.) Beginning in 2015, McCoy was employed at Paragon Systems ("Paragon") as a Protective Services Officer ("PSO"). (Id. ¶¶ 4, 6.) During the relevant period, Paragon contracted with Federal Protective Service ("FPS"), an agency within DHS, to provide security services at various federal facilities. (Id. ¶¶ 5-7.) As a prerequisite for his employment with Paragon, McCoy was required to pass DHS's suitability determination. (Id. ¶¶ 4, 8.)

As a Paragon contract employee, McCoy provided security at Social Security Administration ("SSA") and Customs and Border Protection offices in Chicago. (Id. ¶ 9.) According to the complaint, FPS officers occasionally observed PSOs, including McCoy. (Id. ¶ 10.) But the complaint is silent on whether FPS officers had any supervisory role over PSOs like McCoy. On occasion, McCoy interacted with FPS Officer Jamie Taylor, who is younger than McCoy and allegedly made intimidating, belittling, or condescending comments to McCoy, including that he did not "know what he was doing." (Id. ¶¶ 11-12.) McCoy alleges that Taylor treated others under age 40 more favorably than those over 40. (Id. ¶ 13.)

On or about December 10, 2019, McCoy was assigned to work at an SSA office in Chicago when an individual became disruptive. (Id. ¶ 14.) McCoy was instructed to remove this individual from the premises. (Id.) When McCoy tried to do so, the individual became threatening and hostile toward him and two other

2

PSOs. (Id. ¶ 15.) Pursuant to protocol and training, McCoy detained the individual, and another PSO contacted local police and FPS. (Id. ¶¶ 15-16.) McCoy then escorted the individual to an interview room, where the individual threw and knocked around items. (Id. at ¶¶ 17-18.) In response, McCoy and another PSO handcuffed the individual. (Id. ¶ 18.) When local police arrived, they wanted to take the individual into police custody, but McCoy asked them to wait until FPS officers arrived. (Id. ¶ 19.) FPS officers, including Taylor, arrived about 20 to 30 minutes later. (Id. at ¶ 20.) McCoy alleges that Taylor criticized him for not "properly detain[ing]" the individual and cooperating with local police, without any explanation. (Id. ¶ 21 (internal quotations omitted).)

McCoy alleges, "upon information and belief," that Taylor relayed disparaging information about McCoy and his handling of the incident to Paragon. (Id. ¶ 22.) Less than two weeks later, on December 20, 2019, Paragon fired McCoy. (Id. ¶ 23.) McCoy does not provide Paragon's explanation for the termination decision in his complaint. McCoy then filed a union grievance in response. (Id. ¶ 24.) In July 2020 Paragon settled the union grievance by agreeing to reinstate McCoy, but only if DHS found him suitable for employment. (Id. ¶ 25.)

On October 5, 2020, as part of the background investigation for the suitability determination, a DHS representative contacted McCoy to inquire about his December 2019 termination and financial issues cited in his credit report. (Id. ¶ 26.) McCoy responded on October 9, 2020, by providing information about his termination and subsequent reinstatement and resolution of the credit report

3

issues. (Id. ¶ 27.) Nonetheless, a few weeks later, on October 27, 2020, DHS notified McCoy that he was not suitable for employment, citing his December 2019 termination. (Id. ¶ 28.) DHS's suitability decision barred McCoy from getting his job back with Paragon. McCoy alleges, "upon information and belief," that DHS: (1) did not revoke the suitability determinations of the two other PSOs[1] involved in the December 2019 incident; (2) interfered with the suitability review process to ensure that he was deemed unsuitable to serve as a PSO; and (3) used "pretextual disciplinary issues" to terminate African American employees and hire non-African American employees. (Id. ¶¶ 30-32.)

## Analysis

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice of the claim's basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title VII and the ADEA prohibit employers from discriminating against employees on the basis of their race and because they are over the age of 40, respectively. 42 U.S.C. § 2000e-2(a); 29 U.S.C. § 621. To state a claim for

---

[1] The complaint is silent on whether Paragon fired the other two PSOs who responded to the disruptive individual at the SSA office.

discrimination under either statute, the plaintiff must first allege facts sufficient to demonstrate an employment relationship with the defendant. *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (affirming district court's dismissal of plaintiff's Title VII and ADEA claims because plaintiff had not alleged an employment relationship with defendants). In certain circumstances, an entity other than a plaintiff's direct employer can be held liable for Title VII or ADEA discrimination under a "joint employer" or "*de facto* employer" theory of liability. *See Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023) ("[T]he cases recognize that an indirect or *de facto* employer can be liable to an individual under Title VII provided it had sufficient control over the terms and conditions of that individual's work."); *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 CV 8146, 2022 WL 1404833, at *7 (N.D. Ill. May 4, 2022) ("Title VII allows a plaintiff to bring a claim against a defendant who is not her direct employer under certain circumstances."); *Snowwhite v. IBEW Loc. 117 Joint Apprenticeship & Training Fund*, No. 11 CV 8466, 2013 WL 3754622, at *9 (N.D. Ill. July 16, 2013) ("While there are no Seventh Circuit decisions that speak directly to the availability of a joint employer theory under the ADEA, district courts within the circuit and other circuits . . . have found that a joint employer theory is cognizable under the ADEA." (citations omitted)).

DHS argues that McCoy fails to state a claim for employment discrimination because he does not allege an employment relationship with DHS or sufficient facts from which the court could reasonably infer that DHS was a joint employer with

5

Paragon. (R. 10, Govt.'s Mot.) In response, McCoy concedes that Paragon was his direct employer, but argues that he alleged enough facts to demonstrate DHS's liability as a joint employer, and that DHS's motion essentially amounts to a mere denial of liability that cannot be resolved at this stage. (R. 15, Pl.'s Resp.) Based on its review of the complaint, and drawing all reasonable inferences in McCoy's favor, the court agrees with McCoy that he has pleaded sufficient facts from which the court can plausibly infer a joint employment relationship. "Discovery may prove otherwise, but at this stage," McCoy's allegations are sufficient to satisfy "liberal pleading requirements" under Federal Rule of Civil Procedure 8. *Nor v. Alrashid*, No. 20 CV 7470, 2022 WL 815542, at *6 (N.D. Ill. March 17, 2022).

To determine whether a defendant who is not the plaintiff's direct employer can be held liable for discrimination under a joint employment theory, courts in this circuit apply the five-factor "economic realities" test the Seventh Circuit articulated in *Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991). *See Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018) (collecting cases).[2] Those factors are:

---

[2] While *Knight* dealt solely with Title VII claims in the context of "differentiat[ing] between employees and independent contractors, it soon came to be used in this circuit to determine which entity or entities should be considered to be an employer for purposes of Title VII liability where there was more than one putative employer." *Frey*, 903 F.3d at 676. As noted, the Seventh Circuit has not decided whether a joint employment theory of liability is available for ADEA claims, but trial and circuit courts outside the Seventh Circuit have found the theory applies under the ADEA. *See Snowwhite*, 2013 WL 3754622, at *9. The court assumes for purposes of the current motion, as the parties have, that joint employer liability is available under the ADEA, and that the same *Knight* factors apply in determining joint employer liability under the ADEA.

6

> (1) the extent of the [alleged] employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.

*Id.* (citing *Knight*, 950 F.2d at 378-79); *see also Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015). The first factor, the employer's right to control and supervise, is typically the most important consideration in this inquiry. *Nischan v. Stratosphere Quality*, LLC, 865 F.3d 922, 929 (7th Cir. 2017). "Generally, the key control powers are 'those of hiring and firing.'" *Harris v. Allen Cnty. Bd. of Comm'rs*, 890 F.3d 680, 684 (7th Cir. 2018) (citing *Love*, 779 F.3d at 703). "Even if a putative employer does not exercise control over the plaintiff as a general matter, it may qualify as a *de facto* employer if it exercises control over the specific aspects of his employment related to the subject of his suit." *Bronson*, 69 F.4th at 450 (internal quotation marks omitted).

Here, the complaint lacks allegations addressing the second through fifth *Knight* factors, other than partially touching on the second factor by identifying McCoy's job at issue as private security. To be sure, there are no allegations discussing the nature of any skills required or whether those skills were acquired on the job. Nor are there allegations tying any of those factors to DHS. Absent also are allegations suggesting DHS was responsible for paying McCoy, providing him benefits, or funding the operations of his employment. As such, the parties focus

their briefing and arguments solely on the first factor—the extent of DHS's control over and supervision of McCoy's employment.

As DHS points out, it did not directly hire McCoy (or other Paragon employees), or directly fire him. (R. 10, Govt.'s Mot. at 4-5.) Rather, DHS says it was Paragon that held that power, (id.), and that Paragon is therefore McCoy's sole employer under *Knight*. McCoy responds that, notwithstanding DHS's lack of power to hire and fire directly, he has adequately alleged that DHS exercises significant control over his employment to establish joint employer liability. (R. 15, Pl.'s Resp. at 3-6.) In particular, McCoy points out that DHS shares control over: (1) where McCoy worked; (2) how he performed his work; (3) how his performance was evaluated; and (4) whether he was suitable for employment. (Id. at 5.)

But McCoy's complaint does not include sufficient allegations to support his first three points. As to McCoy's suggestion that DHS controlled where he worked, he does not allege how DHS determined his facility assignments. (R. 1, Compl. ¶ 9 (alleging only that McCoy "was stationed at [DHS's SSA] office on 63rd and Cottage Grove and at the DHS Customs and Border office in downtown Chicago").) McCoy's conclusory claim in his response brief that DHS decided where he worked is thus unsupported by the complaint.

Nor does McCoy allege that FPS officers directly supervised McCoy or other PSOs in their day-to-day activities. (See id. ¶¶ 10-12.) McCoy claims in his response brief that DHS "supervised contract employees, applying its protocols to their work and assessing the employee's performance of those protocols." (R. 15,

8

Pl.'s Resp. at 5.) But while the complaint refers vaguely to McCoy's "training" and certain "protocols" he was required to follow on the job, it does not allege any details as to either subject or which entity was responsible for them. (R. 1, Compl. ¶¶ 15, 17, 19.) Similarly, although the complaint suggests that FPS officers like Taylor "occasionally observe[d]" McCoy's work, it does not indicate that those observations played any role in McCoy's on-the-job performance evaluations, let alone that said observations involved anything more than being in the same place at the same time. (Id. ¶ 10.) As such, the complaint is devoid of facts that would support inferences that DHS controlled McCoy's assignments to certain facilities, supervised him, and evaluated his work based on its own training and protocols. *See Bruno v. Glob. Experience Specialists, Inc.*, No. 19 CV 6710, 2020 WL 5253139, at *3 (N.D. Ill. Sept. 3, 2020).

However, McCoy's allegations regarding DHS's suitability determination—a decision DHS makes, not Paragon—show that DHS had just as much authority as Paragon, if not more, when it came to reinstating McCoy in October 2020. (R. 1, Compl. ¶¶ 4, 25, 28.) The fact is, as alleged, DHS's failure to renew McCoy's suitability resulted in Paragon not reinstating him as an employee and Paragon had nothing to do with the suitability determination. (Id. ¶ 29.) Furthermore, the complaint alleges, "upon information and belief,"[3] that FPS Officer Taylor

---

[3] "When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are 'based on secondhand information that [he] believes to be true.'" *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (citing Black's Law Dictionary 783 (7th ed. 1999)).

influenced Paragon's decision to terminate McCoy, and that FPS and Taylor interfered with DHS's subsequent suitability review. (Id. ¶¶ 22, 31.) Together, these allegations are enough to raise an inference that DHS exercised sufficient influence over both McCoy's hiring and firing and, thus, sufficient control over McCoy to be considered his joint employer. "Whether, in fact, [DHS] was a joint employer, is an issue for another day." *Kim v. FNS, Inc.*, No. 22 CV 230, 2023 WL 6049913, at *4 (Sept. 15, 2023).

DHS disagrees, arguing any influence FPS and Taylor may have had over McCoy's employment equates to that of "a *complaining client*," not "a *joint employer* for purposes of Title VII liability." (R. 17, Govt.'s Reply at 4 (emphasis in original).) DHS relies on *Nischan*, 865 F.3d at 929, for support. In *Nischan* the Seventh Circuit held that when a service provider removes an employee based on complaints from a customer or client, that alone is not sufficient to render the customer or client a joint employer. *Id.* The plaintiff in *Nischan* worked as a car inspector for Stratosphere, which Chrysler hired to inspect its vehicles at a parking lot. *Id.* at 926. The plaintiff alleged that a Chrysler employee sexually harassed her, and that this employee encouraged the plaintiff's supervisors at Stratosphere to fire her. *Id.* at 926-27. The plaintiff brought claims against her direct employer Stratosphere and its customer, Chrysler, but the Seventh Circuit affirmed the trial court's dismissal of the plaintiff's claims as to Chrysler on grounds that Chrysler was not a joint employer. *Id.* at 929. The Seventh Circuit explained that:

> [t]rue enough, Stratosphere did remove Nischan at [the Chrysler employee's] behest. Nevertheless, it is very common for service

10

> providers to adhere to their client's wishes on personnel decisions. For example, a law firm might comply with a request from a client to remove an associate from a case after the associate missed a filing deadline; or a bank might acquiesce to a demand from a home buyer to remove a lending agent from a mortgage deal when the agent's negligence caused the parties to miss their closing date. In these situations, the associate and the lending agent aren't employees of their respective companies' clients. And this case is no different: Nischan wasn't Chrysler's employee just because [a Chrysler employee] requested and obtained her removal from the lot.

*Id.*

But the facts of *Nischan* are very different from the facts alleged in this case. Most significantly, the employer Stratosphere was not obligated to hire or fire specific individuals based on what its client Chrysler suggests or demands. However, in this case, the facts McCoy alleges raise an inference that Paragon was indeed obligated to comply with DHS's suitability determinations during the hiring, retention, and reinstatement process. DHS contends that its suitability requirement is akin to a background check or drug test, and merely requiring satisfaction of preconditions to work as a contractor does not render an entity a joint employer. (R. 10, Govt.'s Mot. at 5 (citing *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 423 (S.D.N.Y. 2017)).) But without factual inquiry, the court cannot accept DHS's representation that it did not exercise any control over McCoy's hiring and firing when it decided on his suitability to serve as a PSO. Furthermore, at this stage, the court must draw all reasonable inferences in McCoy's favor, including that DHS exercised its own judgment and discretion when making its suitability determination. And this alleged suitability determination

11

does not appear to be the same as Paragon checking to see if McCoy has any felony convictions in his background or whether he passed a drug test.

Finally, DHS points out that Paragon entered into an agreement with McCoy's union, allowing McCoy to return to work so long as he received another suitability determination—and no allegations in the complaint suggest this agreement was made with input or control from DHS, or that DHS was even aware of it. (R. 17, Govt.'s Reply at 5-6.) As such, DHS argues that any agreement between Paragon and the union cannot extend liability to DHS as an employer because any degree of control is lacking. (Id.) But this argument sidesteps the central issue here—whether DHS exerted enough control over McCoy's hiring or firing to be considered a joint employer. Moreover, this argument highlights that Paragon had no control over the suitability determination process.

## Conclusion

For the foregoing reasons, DHS's motion to dismiss is denied.

                **ENTER:**

                _____
                **Young B. Kim**
                **United States Magistrate Judge**