# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DERRICK McCOY,            )
         Plaintiff,       )
                    )
                    )   No. 22 C 2690
     v.                 )
                    )   Magistrate Judge
ALEJANDRO MAYORKAS,  )   Daniel P. McLaughlin
         Defendant.    )
                    )
                    )

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant's Motion for Summary Judgment [49]. For the following reasons, Defendant's Motion is granted.

## <u>FACTS</u>[1]

Plaintiff was employed by Paragon Systems as a Protective Security Officer ("PSO") from 2015 until his termination in 2020. [65] at ¶ 1. Paragon contracted with the Federal Protective Service ("FPS") (which is part of the Department of Homeland Security) to provide security services at certain federal facilities, including a Social Security field office at 63rd Street and Cottage Grove in Chicago. *Id.* at ¶ 4. Paragon trained Plaintiff on a variety of topics before starting work, including detainment and appropriate exercise of force. *Id.* at ¶ 2. Plaintiff's job description "[e]xpressly stated that, as a PSO, it was his responsibility to use defensive tactics to prevent or control

---

[1] The following facts are derived from the parties' Local Rule 56.1 statements and responses and the exhibits attached thereto. The facts are either undisputed or recitations of evidence presented by the parties bearing upon disputed issues.

movements of individuals, defend against violent combative person(s) to prevent injury to self or others, and physically control individuals displaying disruptive or violent behavior, to include applying handcuffs." *Id*. at ¶ 3.

In December 2019, while Plaintiff was stationed at the Social Security field office at 63ʳᵈ Street and Cottage Grove, a customer became disruptive while demanding her benefits check. *Id*. at ¶ 5. That customer "[j]umped through a teller-style window and lunged at two federal employees," although "[t]hey did not make physical contact." *Id*. at ¶ 6; [48-1] at 107. Following this, Plaintiff and his partner PSO Lattrice Haywood told the individual that "[i]f you don't leave, you're going to be detained, you're going to be arrested, so it's best to just go ahead and leave." [48-1] at 35-36. The individual refused to leave the facility. *Id*. Plaintiff and PSO Haywood escorted the individual to an empty interview room in the facility. *Id*. at 36. PSO Haywood went to call the police and Plaintiff stood outside the interview room in the doorway. *Id*. at 37.

The individual became combative, asking where the police were and stating they were tired of waiting. *Id*. Plaintiff observed the individual "[r]eally going off" and pushing over metal stands used to create rope barriers. *Id*. Plaintiff observed the individual jump on top of a desk. *Id*. The individual proceeded to tell Plaintiff that they "[w]ere going to kill [Plaintiff]… [t]hey're going to find [Plaintiff's] body in the river… [t]hey're going to have people come up to the Social Security officer." *Id*. at 39. The individual also jumped onto the counter and threw gang signs, saying "I'm going to have someone come up here and kill you guys." *Id*. at 41. While standing in the

2

doorway to the room, Plaintiff took photographs of the individual in the interview room with his personal cell phone. *Id.* at 54. There was no security camera in the interview room. *Id.* While the individual took these actions in the interview room, Plaintiff waited for his partner to come help, and then PSO Haywood applied handcuffs to the individual. *Id.* at 44-45.

After the individual was handcuffed, the police arrived. *Id.* The parties dispute the extent to which Plaintiff cooperated with the police; Plaintiff states that he simply asked the police to wait for FPS to arrive, and Defendant characterizes this as uncooperative behavior. *Id.* at 43. Following the arrival of the police, FPS Inspector Jamie Taylor arrived. *Id.* Inspector Taylor observed blood on the table in the interview room. *Id.* at 42. However, Plaintiff did not observe the individual sustain any injuries while in the interview room. *Id* at 43. Plaintiff wrote a report for Inspector Taylor. *Id.* at 49-50.

It is undisputed that, following the incident, Plaintiff should have reported the incident through his chain of command at Paragon, but he did not. [65] at ¶ 11. Inspector Taylor reported the incident to his FPS area commander. [48-6]. The parties dispute Inspector Taylor's motivations for reporting the incident. [67] at ¶ 40. Plaintiff claims that Inspector Taylor reported the incident for discriminatory reasons because Inspector Taylor had a "[r]eputation among other FPS inspectors and managers for exaggerating and fabricating complaints against others." *Id.* Plaintiff also claims that Inspector Taylor previously made "[d]erogatory comments" about "[o]lder PSO's [*sic*] being too old to do the job, not being in shape, and not being able

3

to detain, wrestle or chase individuals." *Id.*

After receiving the report of the incident, Inspector Taylor's FPS area commander contacted Paragon supervisor Paul Suski about the incident. [65] at ¶ 11. Suski then sent the following email to Paragon's human resources department:

> We received notice from Area Commander that PSO Derrick McCoy POST 202B 6338 S. Cottage Grove, Chicago IL, was called for an unruly claimant at a window on 12-9-19. PSO McCoy did not detain the female claimant, and escorted her to an interview room. The claimant caused harm to herself, and damaged property to the facility. PSO McCoy also utilized his personal cell phone to take pictures of the claimant. Chicago PD arrived and PSO McCoy was not cooperating with them, when FPS arrived he was asked to write a statement, and when asked to give it to FPS, he refused to do so, so he can have a copy.

*Id.* at ¶ 12. After this, Paragon suspended Plaintiff pending an investigation. *Id.* at ¶ 13. As part of the investigation, Paragon interviewed Plaintiff about the incident. [48-2] at 2. After the investigation was completed, Paragon terminated Plaintiff,[2] noting in the termination letter that Plaintiff's "[b]ehavior during the investigation interview corroborated the behavior described by FPS officials." *Id.*

After his termination, Plaintiff sought help from his union, and the union filed a grievance. [65] at ¶¶ 19-20. The grievance proceedings ended in a negotiated settlement agreement dated July 10, 2020. *Id.* at ¶ 20. "As part of this settlement, Paragon's management agreed to rescind the termination only if [Plaintiff] could obtain a favorable suitability determination from the Federal Protective Service." *Id.* at ¶ 21.

---

[2] The Court notes that Defendant "[c]oncedes that there is a dispute of fact concerning whether the Department can be held liable as a joint employer" for Paragon's termination of Plaintiff. [50] at 6. Paragon was not sued as a Defendant in this action.

Plaintiff then initiated the suitability review process with FPS by filling out an e-QIP application, which required him to list all of the recent places he had worked. *Id*. at ¶ 22. The application also asked Plaintiff to disclose any recent terminations, which he did. *Id*. at ¶ 23. Chris Campbell, an adjudicator, reviewed Plaintiff's application. *Id*. at ¶ 24. Campbell noticed the recent termination and asked Plaintiff to provide further information. *Id*. It is undisputed that, in Campbell's letter making the request for further information from Plaintiff, he "[e]xplicitly warned Plaintiff that a recent termination was potentially disqualifying under the Department's regulations." *Id*. at ¶ 25. Before sending the letter to Plaintiff requesting mitigating information about the termination, Campbell asked his boss, Dina Martinez, for her concurrence on sending a letter to request further information. [56-8]. Martinez concurred, noting in her response that "[t]his applicant was fired from Paragon recently" and that it was a "[p]retty bad incident." *Id*.

On September 25, 2020, Campbell asked Paragon about the underlying incident. [56-6] at 1. Paragon responded with the following email:

> PSO McCoy was terminated last year after failing to properly detain a disruptive visitor, with the additional factor of failing to properly participate in the investigation of the incident. The Union grieved the termination. In response to the grievance, the Company conducted a second review of the incident, and based on Weingarten rules the Company re-evaluated McCoy's cooperation in the investigation. In light of that re-evaluation and McCoy's five years of service on the contract, the Company believes that the event was an isolated - if severe - error in judgment, and that with retraining PSO McCoy should be reinstated.

[67] at ¶ 35. On October 5, 2020, Campbell sent a letter requesting information from Plaintiff. [48-10]. Thereafter, Plaintiff responded with the following explanation:

5

> I, PSO Derrick McCoy Detained [*sic*] a unruly claimant at social security office by escorting her to the interview room to wait for FPS response because she was compliant at the time. The claimant started to throw objects in the interview room at which time I alerted the other pso to help me handcuff the claimant. The FPS inspector issued Paragon a complaint saying I didn't detain claimant correctly. Paragon terminated me for this complaint but agreed with the union to return me back to work.

[65] at ¶ 26.

After receiving information from Paragon and Plaintiff about the incident, Campbell recommended to Martinez that Plaintiff be given an unfavorable suitability determination. [48-12] at 6. Martinez agreed with Campbell's recommendation and sent Plaintiff a letter on October 27, 2020, informing Plaintiff that he had "[f]ailed to provide sufficient information or documentation to mitigate the fitness concerns cited in [Campbell's] letter" and that Plaintiff's fitness determination was therefore denied because of Plaintiff's "[e]mployment conduct which ultimately lead [*sic*] to [Plaintiff's] termination with Paragon Systems, Inc." [48-13] at 2. It is undisputed that Martinez was unaware of Plaintiff's age or race at the time of her decision. [65] at 12. Because Plaintiff did not obtain a favorable suitability determination from FPS, he "[c]ould not resume his employment at Paragon." [67] at 10.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006) (quotations and alterations omitted). However, the court is to "construe the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party." *Thompson Corrugated Sys., Inc. v. Engico, S.R.L.*, 111 F.4th 747, 751 (7th Cir. 2024) (citation omitted).

## ANALYSIS

Plaintiff brings this case asserting age and race-based employment discrimination claims, challenging his unfavorable suitability determination by FPS in October 2020, which came on the heels of his December 2019 termination from Paragon. [1]. In Count I of his complaint, Plaintiff alleges discrimination on the basis of his race (Black) in violation of Title VII of the Civil Rights Act of 1964. [1] at 6. In Count II of his complaint, Plaintiff alleges that he was over the age of forty at the time of the alleged conduct and that he experienced discrimination on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA). *Id.* at 7. Plaintiff named the Department of Homeland Security, the "parent agency" for FPS, as the only Defendant. [1] at 2. Paragon, Plaintiff's former employer, was under contract with FPS to provide security services at certain federal facilities. As detailed above, Plaintiff required a suitability determination from FPS in order to have his termination with Paragon rescinded. [65] at ¶¶ 4, 21. Plaintiff did not name his former employer, Paragon, as a defendant. [1] at 2. The parties consented to the

7

jurisdiction of the magistrate judge on September 21, 2023. [19].

In moving for summary judgment, Defendant argues that "Plaintiff does not allege any discriminatory animus on the part of the actual decision makers"—being the Paragon managers who originally terminated Plaintiff's employment or Martinez (who ultimately made Plaintiff's suitability determination)—and that Plaintiff must therefore rely on a "cat's paw" theory of liability wherein Inspector Taylor is the source of the discrimination. [50] at 6. The cat's paw "[t]heory is invoked in employment discrimination contexts when a biased supervisor, or a biased subordinate, who lacks decision-making power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021) (quotations and citations omitted). In order to succeed on a cat's paw theory of discrimination, "[t]he plaintiff must provide evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action." *Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018) (internal quotations and citations omitted).

Defendant contends that Plaintiff cannot demonstrate evidence of Inspector Taylor's discriminatory animus and cannot demonstrate that Inspector Taylor's report about the incident at the Social Security office was the proximate cause of Plaintiff's termination or suitability determination. [50] at 7-9. Plaintiff argues that he can prove each prong of cat's paw liability. [55]. Plaintiff also separately asserts

as to his claim of age discrimination that, under *Ortiz*, the "record as a whole" would allow a reasonable jury to conclude that Plaintiff suffered the adverse employment action because of his age, and that the justifications for the adverse employment actions were pretext for age discrimination. *Id*. As to his claim of race discrimination, Plaintiff argues that he can demonstrate a prima facie case of race discrimination under the *McDonnell Douglas* framework. *Id*. The Court will address each of these arguments in turn.

### A. Cat's Paw

"The ADEA protects workers who are at least 40 years of age from age-based employment discrimination." *Sinha*, 995 F.3d at 573. Generally, "[a] plaintiff suing under the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Id*. However, a Plaintiff may also prove age-based discrimination via the cat's paw theory, which requires that the Plaintiff "[p]resent evidence that the biased subordinate actually harbored discriminatory animus against him and that the subordinate's scheme proximately caused the adverse employment action." *Id*. Plaintiff attempts to prove age-based discrimination here via cat's paw, characterizing Inspector Taylor as the "biased subordinate" who proximately caused Martinez to take the adverse employment action. [54] at 11.

As to evidence of Inspector Taylor's alleged age-related discriminatory animus, Plaintiff points to PSO Haywood as a comparator, arguing that PSO Haywood was also involved in the December 2019 incident, is younger than Plaintiff, and was

treated more favorably after the incident. [54] at 8. Plaintiff also puts forth the declaration of Will Davis, the former vice president of the CFER union. [56-3]. Davis states that he "[h]eard… Inspector Taylor make comments on numerous occasions about older PSO's being too old to do the job, not being in shape, and not being able to detain, wrestle or chase individuals." *Id*. at ¶ 9.

As an initial matter, Defendant objects to Plaintiff's reliance on PSO Haywood as a comparator, arguing that Plaintiff did not disclose PSO Haywood in discovery and that allowing Plaintiff to rely on PSO Haywood as a comparator would be harmful to the Defendant at this stage of the case. [68] at 2-3. Defendant points out that in written discovery, it asked Plaintiff "[f]or the names of his alleged comparators," and Plaintiff provided none. [48-15] at 8-9. Defendant also asked Plaintiff at his deposition to identify any comparators, and Plaintiff did not do so. [48-1] at 66-67. Defendant alleges that "[d]iscrimination cases like this often hinge… on the existence of a viable comparator" and that as a result, "[p]arties in employment discrimination cases like this often devote significant discovery efforts to identifying comparators and finding evidence to support or rebut" the comparator's relevance. [68] at 2. Defendant therefore argues for the application of Rule 37(c)(1), which states that:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

The Court "[agrees] that the evidence [Plaintiff] now seeks to offer of these alleged comparators was information he was obligated to reveal during discovery."

10

*Sansone v. Kormex Metal Craft, Inc.*, 14C8418, 2016 WL 1529900, at *6 (N.D. Ill. Apr. 14, 2016). The Court thus proceeds to evaluate whether Plaintiff's failure to disclose PSO Haywood was substantially justified or harmless. "The determination of whether a Rule 26 violation is justified or harmless is entrusted to the broad discretion of the district court." *U.S. Equal Emp. Opportunity Comm'n v. Cir. City Stores, Inc.*, 2C4672, 2007 WL 9813353, at *2 (N.D. Ill. Mar. 2, 2007). The Seventh Circuit has indicated that a Court should consider the following factors in determining whether a failure to disclose is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id*.

While it may not come as a huge surprise to Defendant that Plaintiff now puts forth PSO Haywood as a comparator (given her involvement in the incident), the prejudice to Defendant in allowing Plaintiff to proceed with such evidence at this stage of the case—when discovery has been completed, and nearly three years have elapsed since the case's inception—would be significant. The ability to cure the prejudice would essentially require a re-opening of fact discovery given Defendant's reasonable representation that "significant discovery efforts" would likely have gone towards finding evidence to rebut comparators, in turn making the likelihood of disruption to this case substantial.

Furthermore, Plaintiff puts forth no argument justifying his failure to identify PSO Haywood as a comparator in either written or oral discovery. In fact, Plaintiff

did not even acknowledge in his response brief that he failed to identify PSO Haywood as a comparator in discovery; Plaintiff instead simply asserts that she was a comparator, even though Plaintiff explicitly chose not to identify PSO Haywood as a comparator in response to Defendant's discovery inquiries asking for that exact information. Plaintiff's decision not to identify PSO Haywood as a comparator in discovery could therefore conceivably be in bad faith, especially given the fact that PSO Haywood was known to Plaintiff as having been directly involved in the incident at issue. The Court therefore concludes that Plaintiff's failure to disclose any alleged comparators is not harmless or substantially justified, and that this failure "[w]arrants barring him from attempting to use that evidence now." *Sansone*, 14C8418, 2016 WL 1529900 at \*6.

Moreover, "[e]ven if plaintiff was not obligated to identify these [comparators] earlier, he offers no competent evidence about them sufficient to create a genuine material fact as to whether they were similarly situated to him." *Sansone*, 14C8418, 2016 WL 1529900 at \*6. "To determine whether two employees are similarly situated, the Seventh Circuit looks at a number of factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *Id*.

Plaintiff puts forth no evidence as to any of these factors beyond basely asserting that PSO Haywood was "younger" than Plaintiff and identifying her as a PSO like Plaintiff. [54] at 8; *see also Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988

F.3d 948, 958 (7th Cir. 2021) ("Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue.") (internal citations omitted). Plaintiff also puts forth no evidence substantiating his claim that PSO Haywood was treated more favorably[3] after the December 2019 incident. *See United States v. Romero*, 15C5607, 2017 WL 61025, at *3 (N.D. Ill. Jan. 5, 2017) ("As this Court has emphasized, in determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements.") (internal quotations and citations omitted). The Court therefore declines to consider further any evidence as to PSO Haywood as an alleged comparator.

The Court thus turns to Plaintiff's remaining evidence of Inspector Taylor's age-based discriminatory animus,[4] namely, Davis' statement that he had heard Inspector Taylor make comments about older PSOs. Even assuming that such

---

[3] The Court is aware of Davis' statement indicating that, "[t]o his knowledge," PSO Haywood was not investigated or disciplined in relation to the December 2019 incident. [56-3] at 2. However, Plaintiff did not cite to this statement (or any other evidence, for that matter) in support of his claim that PSO Haywood was treated more favorably. *Riley v. City of Kokomo*, 15C391WTLDML, 2017 WL 897281, at *9 (S.D. Ind. Mar. 7, 2017), *aff'd*, 909 F.3d 182 (7th Cir. 2018) ("However, the adage that 'Judges are not like pigs, hunting for truffles buried in briefs' applies here. The Court will not make a party's arguments for her, nor will it assemble the evidence necessary to support her position."). The Court therefore does not view this limited information as substantiation of Plaintiff's claim.

[4] The Court addresses Plaintiff's limited argument that Inspector Taylor's "Jamie sauce"—explained as Inspector Taylor's tendency to exaggerate and/or fabricate "[c]laims *against people he did not like*"— is also evidence of age-based discriminatory animus. [54] at 10 (emphasis added). Plaintiff asserts that Inspector Taylor included "Jamie sauce," or exaggerations, in his report about the December 2019 incident. *Id*. But Plaintiff does not articulate how such alleged exaggerations are evidence of age-based discriminatory animus. Thus, even if "Jamie sauce" *was* added to the report, Plaintiff has not articulated why it evinces age-based discriminatory animus rather than a simple dislike of Plaintiff or his actions during the December 2019 incident. *Benford v. Chicago Beverage Sys. L.L.C.*, 07C6958, 2009 WL 1684461, at *7 (N.D. Ill. June 15, 2009) (noting that a supervisor's possible "[p]ersonal dislike of Plaintiff…is unpleasant but not illegal under the ADEA.").

13

comments "[r]eflec[t] age bias… it cannot get [Plaintiff] past summary judgment" as Plaintiff does not identify when these comments were made. *Perry v. Dep't of Hum. Servs.*, 793 F. App'x 440, 442 (7th Cir. 2020) ("For stray remarks to defeat summary judgment, they must closely relate in time to the adverse actions."); *see also Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 781–82 (7th Cir. 2007) ("We have held, however, that stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment."). Accordingly, Plaintiff has not "[p]resent[ed] evidence that the biased subordinate actually harbored discriminatory animus against him," and his cat's paw theory fails. *Sinha*, 995 F.3d at 573.

"Because the cat's paw theory requires a showing of both discriminatory animus *and* proximate causation, [a court] need not address both prongs if the employee makes an insufficient showing on one." *Sinha*, 995 F.3d at 573–74. The Court therefore need not address proximate causation as Plaintiff has made an insufficient showing as to discriminatory animus. However, the Court finds that the proximate causation prong is insufficiently proven in any event. Both the Paragon managers and Martinez conducted independent investigations into the December 2019 incident. [48-2] at 2; [56-6] at 1; [56-8]. Both solicited information about the incident from Plaintiff himself, and Paragon's termination letter specifically stated that Plaintiff's "[b]ehavior during the investigation interview corroborated the behavior described by FPS officials." [48-2] at 2. Paragon's termination letter also stated that "[a] company investigation revealed that on December 9, 2019 you did not

follow post orders and failure [*sic*] to follow proper detainment procedure," and further stated that Plaintiff was in violation of various security handbook rules. *Id*. Martinez's termination letter stated that Plaintiff "[f]ailed to provide sufficient information or documentation to mitigate the fitness concerns cited in the letter." [48-13] at 2.

"An employer may avoid cat's-paw liability if the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *Sinha*, 995 F.3d at 574. As both the Paragon managers and Martinez conducted investigations into the December 2019 incident and did not rely solely on Inspector Taylor's report (pertinently relying in part on Plaintiff's own testimony), Plaintiff has not demonstrated that Inspector Taylor's report was the proximate cause of the adverse employment actions.

Ultimately, "[t]his is a particularly weak cat's paw case because, even if we assume [Inspector Taylor] was prejudiced, there were not one but *two* layers of bias-free analysis." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009). The underlying termination by the Paragon managers was predicated on an independent investigation—even if that investigation was spurred by Inspector Taylor's report—that relied in part on Plaintiff's own interview about the incident. *Sinha*, 995 F.3d at 574 ("[T]he decisionmaker need not be a paragon of independence."). Following that, Martinez's unfavorable suitability determination as to the import of the underlying Paragon termination was also predicated on an independent investigation that relied in part on Plaintiff's own explanation of the

15

termination. Thus, Plaintiff's cat's paw theory fails on both prongs, and a reasonable jury could not find in favor of Plaintiff on a cat's paw theory.

## B. Age Discrimination- *Ortiz* and Pretext

At the outset, the Court points out that "[i]n invoking the cat's paw theory, [Plaintiff] appears to concede that [Martinez] had legitimate, nondiscriminatory reasons for terminating [Plaintiff's] employment. After all, if the decision makers held discriminatory animus toward [Plaintiff], then the cat's paw theory would not be necessary." *Jacquelyn D. Miller v. Express, LLC,* 19C50341, 2021 WL 3737734, at *8 (N.D. Ill. Aug. 24, 2021). Plaintiff's additional argument under *Ortiz* and allegation that Martinez's "[s]tated reasons for denying his suitability determination amount to pretext" therefore appear to be inherently unavailing. [54] at 9.

Even if they were not, the Court would still find that these arguments fail. There are two available frameworks under which an individual can show discrimination in this circuit. *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023) (stating that "[i]n our circuit, plaintiffs can rely on two frameworks to show discrimination" and proceeding to describe those two frameworks, being *Ortiz* and *McDonnell Douglas*). The "holistic approach" under *Ortiz* asks a Court to "[l]ook at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination." *Id. (citing Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The burden-shifting framework of *McDonnell Douglas* "[r]equires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts

16

back to the plaintiff to show that the employer's stated reason was a pretext." *Igasaki*, 988 F.3d at 957 (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

In responding to Defendant's motion for summary judgment, Plaintiff appears to invoke both of these frameworks with respect to Martinez by arguing that, "[l]ooking at the record as a whole, a reasonable jury could conclude that [Plaintiff] suffered the adverse employment action because of his age." [54] at 8. Plaintiff further asserts that "[a] reasonable jury could find that FPS' stated reasons for denying his suitability determination amount to pretext." *Id*. at 9. Plaintiff's *Ortiz* argument as to the "record as a whole" relies solely on PSO Haywood as a comparator, which is precluded for the reasons discussed in the previous section. [54] at 8. Plaintiff's argument under *Ortiz* therefore fails because Plaintiff's only proffered evidence is unavailable.

As to Plaintiff's argument that "FPS' stated reasons…amount to pretext," the Court notes that Plaintiff did not first articulate a prima facie case of discrimination under the *McDonnell Douglas* framework and instead jumped directly to an argument of pretext. *Jacquelyn D. Miller*, 19C50341, 2021 WL 3737734, at *7 (stating that where a Plaintiff's brief skips other *McDonnell Douglas* argumentation and instead "[m]erely moves on to pretext… that alone would be enough for the Court to also move on."). Even assuming Plaintiff had presented a prima facie case of discrimination, his argument as to pretext would fail. "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason

17

for some action." *Brooks v. Avancez*, 39 F.4th 424, 435–36 (7th Cir. 2022). Further, in evaluating whether the employer's justifications were pretextual, the Court "[d]oes not evaluate whether the employer's proffered justification was accurate or even whether it was unfair… [the] sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Id.*

In support of his pretext argument, Plaintiff puts forth the following evidence: another comparison to PSO Haywood, which fails for reasons discussed above; Inspector Taylor's stray remarks, which would be evidence of Inspector Taylor's alleged discriminatory animus rather than any animus from Martinez; Inspector Taylor's "Jamie sauce," which is again evidence about Inspector Taylor rather than Martinez; and the declaration of Davis, which states that the maximum penalty for personal phone use is a one-day suspension. [54] at 9-11. As such, the only evidence that can go towards an argument of pretext is the personal phone penalty. However, given that Martinez's suitability determination was predicated on the *overall* "[e]mployment conduct which ultimately lead [*sic*] to your termination with Paragon"—rather than exclusively on personal phone use during the December 2019 incident—the Court cannot conclude that Martinez' justification was a falsehood. [48-13]. The employment conduct which originally led to Plaintiff's termination with Paragon included the use of a personal phone to take photos of the individual *in addition* to a failure to "follow post orders and failure to follow proper detainment procedure" in violation of handbook policy. [48-2]. Plaintiff's pretext argument would

therefore fail even if Plaintiff had presented a prima facie case of discrimination under *McDonnell Douglas* as required in advance of a showing of pretext.

In sum, Plaintiff's largely undeveloped arguments under *Ortiz* and *McDonnell Douglas* would fail even if those arguments were not inconsistent with Plaintiff's invocation of the cat's paw framework against Martinez. For these reasons, based on the available evidence and the undisputed facts in this case, the Court finds that no "[r]easonable jury could conclude that [Plaintiff's] age was the cause of" the adverse employment actions. *Vichio*, 88 F.4th at 691.

### C. Race Discrimination- *McDonnell Douglas*

In support of his race discrimination claim, Plaintiff asserts that each of the *McDonnell Douglas* factors are met. [54] at 12. However, Plaintiff provides no evidence to substantiate his contention that "[h]e was meeting FPS's [*sic*] legitimate expectations." *Id.*; *see also Sinha*, 995 F.3d at 573 ("Conclusions must be supported by specific facts, otherwise they are not sufficient to avoid summary judgment." (internal quotations and citations omitted)). Additionally, Plaintiff again cites to a comparator for the first time, in this instance identifying a White PSO named Michael Perkowski. [54] at 12.

For the reasons explained above, Plaintiff cannot rely on Perkowski as a comparator because he did not disclose Perkowski at any point in discovery despite being asked in both written and oral discovery to identify comparators. Moreover, even if Plaintiff were not precluded from using Perkowski as a comparator for failing to identify him in discovery, the Court would still be unable to find that Plaintiff

presented "[e]vidence from which a reasonable fact finder could conclude that the [P]laintiff has met his burden" on the issue of a comparator because Plaintiff provided "no evidence concerning a similarly situated employee from which the… court could draw a comparison." *Igasaki*, 988 F.3d at 958. Plaintiff simply states that Perkowski was a White PSO who had appealed his suitability determination. [54] at 12. He does not articulate whether Perkowski was subject to the same standards as Plaintiff, subordinate to the same supervisor, or whether he had comparable experience, education, and other qualifications. *Sansone*, 14C8418, 2016 WL 1529900 at *6. These inquiries are particularly important where, as here, Defendant has pointed out that if Perkowski was still an *active* PSO at the time of the suitability determination by FPS, then he would be afforded different appeal rights than a *former* PSO like Plaintiff. [68] at 9. But Plaintiff provides no such details as to Perkowski. In other words, Plaintiff provides "[n]o competent evidence about [Perkwoski] sufficient to create a genuine material fact as to whether they were similarly situated to him." *Sansone*, 14C8418, 2016 WL 1529900 at *6. By failing to present a comparator, Plaintiff has "[m]ade review under *McDonnell Douglas* functionally impossible." *Igasaki*, 988 F.3d at 958. For these reasons, Plaintiff has not sufficiently set forth a prima facie case for race discrimination.

Finally, the Court addresses Plaintiff's two-sentence argument as to Inspector Taylor's alleged racial bias. [54] at 12. Plaintiff states "[i]t was observed by other PSOs that FPS wanted get [*sic*] rid of African American PSOs and bring more diversity in and that [Inspector] Taylor was brought in for that purpose." *Id*. Plaintiff

also states that he saw Inspector Taylor "[t]reat Caucasians more favorably." *Id.* Plaintiff provides no further argument clarifying whether he intends this information to go towards a cat's paw race discrimination theory. The Court "[w]ill not fill th[e] void by crafting arguments and performing the necessary legal research on behalf of either side" and declines to consider this skeletal argument further. *Art Akiane LLC. v. Art & Soulworks LLC*, No. 19C2952, 2020 WL 5593242, at *3 (N.D. Ill. Sept. 18, 2020) (further asserting that "[t]his is not a preference; it is something courts are forbidden to do"). Ultimately, the Court finds that Plaintiff has not "[i]ntroduced evidence that would permit a reasonable factfinder to conclude that [P]laintiff's race… caused the… adverse employment action." *Igasaki*, 988 F.3d at 957.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [49] is granted.


**SO ORDERED.**                                    **ENTERED:**


**DATE:  February 26, 2025**
                                                   _____
                                                   **HON. DANIEL McLAUGHLIN**
                                                   **United States Magistrate Judge**